Lt. Gov. John M. Miller, D.C. Thank you. Please be seated. Good morning. Judge Miller, can you hear us? Yes. Good morning. Excellent. Good morning to you and we can hear you. We have two cases submitted on the briefs at this time, Brisseno-Martinez v. Barr and United States v. Sosi.        I'm going to read the brief. I'm going to read the brief. I'm going to read the brief. I'm going to read the brief. I'm going to read the brief. Good morning, Your Honors, and may it please the Court. I'm Amanda Taylor here on behalf of Country Life Insurance Company and CC Services, Inc., whom I refer to as CCSI. I will keep track of my time in order to reserve three minutes for rebuttal. Your Honors, there is no viable reason, as a matter of law, to impose any liability against CCSI on this record, because CCSI does not exercise any control or even have a voice or right to participate in the claims handling business of Country Life Insurance. This precludes a finding that CCSI is vicariously liable on a theory of joint venture, and it also precludes the imposition of punitive liability against CCSI on a theory of respondeant superior. We request that the Court vacate the judgment against CCSI in full and direct the entry of a take-nothing judgment. This is a little bit unusual in its facts, so I want you to help me with the facts of the case. Sure. As I read the record, CSI, or CLI, the insurance company, doesn't have any employees. Is that correct? That's not legally correct, Your Honor. Is it correct, in fact? It is correct that the paychecks are signed by CCSI. And all of the people who did the work in this case and are employed by—and all the people who do the work for CLI are technically employed by CCSI, correct? The record does not reflect that clearly. What they said, Matt Anderson, who's the claims attorney, Chad Carpenter, the claims attorney, who's the claims analyst, all said, I work for Country Life. That is their testimony. I understand. But then the evidence was that their checks were issued by and signed by CCSI, correct? Correct. As a payroll and HR entity. Okay. So let's assume that a reasonable jury could find that CLI didn't have any employees. It was engaged in the business of life insurance, or business of insurance, and that the way its venture, the way its business worked, was that it and its sister companies, in effect, borrowed their employees from this staffing company owned by the same management. So it wasn't an independent staffing company. Under those circumstances, could a reasonable jury find that CLI and CCSI were engaged in a joint venture to end a business of insurance? No, Your Honor. As a matter of law, there is no legally permissible evidence of that because there's no evidence that CCSI participated in the venture. Well, see, my problem is that the people who made the decisions that gave rise to liability in this case were all paid for, paid by, CCSI, correct? Their paychecks came from CCSI. And I'm not trying to be sure if that's all the records show. That's all we know. I understand your legal argument. I'm trying to find out what the facts are. So as a matter of fact, all the people in this case who made the arguments that gave rise, made the decisions that gave rise to liability, were technically employed by CCSI. Does that work for you? I will agree with that, Your Honor. If that's the case, then why isn't this really, in a classic sense, a joint venture between the company with the employees and the company with the insurance business? The good news for this Court is that the Arizona Supreme Court has told us why. Sparks v. Republic National Insurance is the key case cited by all parties and the District Court in its order on the joint venture issue. Sparks involved three defendants, and Mr. McClure relied on Sparks multiple times but for the wrong portion of the opinion. There were three defendants, an insurance company, that was Republic, and then two trust companies, one called Alpha and one called PST. Alpha undeniably had active involvement in the business of insurance. It was marketing. It was billing and collecting premiums. It was acting as an insurer, and it could be held liable under a joint venture theory. But the other trust company, PST, is much more like CCSI. There was no, quote, active involvement in the venture. The facts in Sparks, which I'm familiar with, are quite different in the sense that the second company wasn't a company that provided all of the employees to the insurer that made the decision. What the Court did, it looked at the facts in that case and said, this second company really wasn't involved in a joint venture. It was just involved in a trust company business. Here these facts are just strange enough to make me wonder whether Sparks has any application to it. Your Honor, I do believe that CCSI is akin to PST in the sense that it is nothing more than a passive subsidiary. Being a staffing agency, even if that's what you consider CCSI and the record doesn't actually then Ruelas answers the question. Ruelas involved a staffing agency that supplied nurses to a hospital. And when both the hospital and the staffing agency were sued But an independent one. I understand we have lots of cases with staffing agencies and lots of cases with independent companies. But in Ruelas, we don't have a hospital that has no employees, and all of whom staff comes from a staffing agency under common ownership. And so I'm trying to figure out if there's some case someplace that addresses this kind of unique situation. Because in a common sense fashion, the way your clients sold insurance was through a joint venture between their staffing company and their insurance company, all of whom were under common ownership. That's what I'm asking for you to try to address. I'll answer that in two parts. First, I have searched nationwide. Not just in Arizona or out of the Ninth Circuit. I have not found a single case with these exact facts. So if this court were to hold that merely signing a paycheck and being an HR company were sufficient to establish a joint venture, it would be the first. There is no case. Please, we're not about to hold that merely being a staffing company and signing paychecks. What we're trying to figure out is whether under the unique facts of this case, I think you admit they're unique. They are, Your Honor. This is a joint venture. We will be the first court to hold either way with respect to this kind of issue. And the second part of my answer to your question is that you have importantly identified in the venture. What is the venture? The venture is handling of the claims. As a matter of law, that is where we have to look at who controls. Okay, so let's take your hypothetical. Let me ask on that question. Who handled the claims in this case? Country Life Insurance. Well, no, what people handled the claims? The key witnesses are Matt Anderson, the attorney, Chad Carpenter, the manager, and Melanie Spellmeyer, the claims analyst. And who was their employer? Each of them testified, I work for Country Life. And again, Your Honor, their testimony is, if you consider my employer to be the person that signs my paycheck, technically that would be CCSI. But my responsibilities and who directs the details of my work, that is Country Life. They explained that they sit in a group in a building with the Country Life Claims Department. CCSI is in a separate building. They do not know much about CCSI was their testimony. They know that they are an HR company. But other than that, they know nothing about CCSI. And their understanding is that they take direction from Country Life. And so, in a borrowed servant paradigm, which is really for responding out superior, but in that sense, you look at who controls their work. And the only testimony that was presented to the jury is that Country Life controls the work of the claims handlers. CCSI definitely controls the benefits and issues the paychecks. We do not have evidence in this record that CCSI is actually a staffing agency. I mean, it all- Does CCSI staff any companies other than the ones under this common ownership? There's a sentence or two in the record that indicates that they do supply employees for other sister companies. Sister companies. Under the umbrella. They're not an independent staffing agency in the sense that Rent-A-Maid might be or Rent-A-Nurse might be. That is correct, Your Honor. But I do want to draw your attention to Matt Anderson's testimony at 375 to 76 of the record, where he says he and other employees describe who they work for as Country Life. Melanie Spellmeyer at 396 of the ER and Chad Carpenter at 308, they all say they work for Country Life, and the jury wasn't presented any testimony at all about CCSI having any control. Can I ask you a question on a slightly different topic? And I want to raise this so that your friends can address it, too. I'm having trouble figuring out why there are two separate punitive damages awards here. Even under a derivative liability or joint venture theory, it strikes me that the award ought to be joint and several. I don't know what the amount ought to be, but I can't figure out why there are two several only awards. Can you address that? There should not be two separate awards, Your Honor. Do you address that in your briefs, though? We do. The jury was instructed that they had to. Where in your briefs? I only read your briefs as attacking an award against CCSI at all. Is there someplace in your briefs where you say, even if there should have been an award against CCSI, it should have been joint and several? No, because the jury was not instructed that they could make a joint and several award against CCSI. They were instructed that they could only find punitive damages against CCSI if they had evidence of independent conduct of an evil mind by CCSI on clearance and convincing evidence, mind you. So the way the jury was instructed— For purposes of bad faith and compensatory damages. Well, I read the vicarious liability instruction. Is it limited to bad faith and compensatory damages? Yes, Your Honor. On its face? It is, I think, part of the charge that was read to the jury that they had to determine independent conduct by CCSI. They could not base their punitive award on a vicarious liability. No, I understand that, on punitive. My question is, wasn't the jury also instructed that it could impose liability vicariously on the defendants? Only for the compensatory damages. Does it say only for the compensatory? Yes, and I'm sorry, Your Honor, that I don't have the record site. I'll find it. But reading the jury instruction with the verdict form together, it is very clear that this decision tree is that if you found that country life was liable for bad faith conduct, and if you found joint venture, then you could find compensatory damages on a joint in several theory. But in order to get to punitive damages, the jury was instructed that they had to find direct individual conduct by CCSI, and that is what is completely void in this record. Your Honor, I do want to touch in about one minute on emotional damages, if I may, emotional distress damages, because they are excessive, as this Court noted in Watson v. City of San Jose, excessive beyond the realm of reasonableness. You have a plaintiff here who testified about a host of preexisting conditions, and the only conditions that existed after the date of termination were the same as those that existed before termination of benefits. That creates a problem for but-for causation, because the jury was properly instructed, they could not award any amount, not even a dollar, for any condition that existed prior to the date of termination, and that's every condition in this case. With that, Your Honors, I'll reserve two minutes for rebuttal. You may do that. Thank you. Good morning, Your Honors. May it please the Court, my name is Eric Fraser. I represent Benjamin McClure. This is not, the employment issue is not just about the paychecks. There's testimony in the record that the jury could find that CCSI was the employer. Chad Carpenter testified, I'm employed with CC Services. That's on, it's in Volume 4 of our supplemental excerpt at page 41. But more importantly, Your Honors, CCSI and Country Life agreed not to contest the individuals who worked on the adjustment and processing of the claim were employed by CCSI. That's in the joint pretrial order. In an ordinary case where you have, let's say, Kelly Services or something, and they would, let's say they had sent employees to Country Life to deal with an influx of claims or something, and they had employees that came there. Would, even though they were employed by Kelly Services, in my example, would Kelly Services be jointly liable for an insurance decision made under the direction of Country Life? Well, I think we'd need more facts because if you meet all of the other requirements for a joint venture, the answer is yes. Well, that's my problem because the requirements seem to be that some active participation, if Kelly Services gets a call saying, gee, what do we do about this claim? That's one thing. But if all they've done is say, you know, we've done the criminal background check. This person seems to know what they're doing. We'll see you in three months when you need another job, and that's their only involvement. They would not be a joint venturer, correct? I think that's right. And so what is it beyond an ownership by an umbrella that distinguishes this situation? I don't see any active involvement by CCSI as distinct from this sort of generic employment agency. The only oddity is that they're owned by an umbrella organization, but I don't see any greater involvement than my Kelly example. So I think there's much greater involvement because in your Kelly example, presumably the insurer has people who are working on claims. They have managers who are training people on how to process claims. Country Life here has no employees. So the people who are managing the claims. Well, I'm not sure that's correct as a matter of law, but if it were, then maybe only CCSI is liable and Country Life isn't. It just seems to me if they are not employed at all by Country Life, then Country Life presumably has no liability. It seems to me you just can't have it both ways. Well, Country Life always has liability because under Arizona law, the good faith obligation is non-delegable. So the liability always flows to Country Life. But CCSI is liable here because the people who are doing the training for the claims managers, the whole management structure of the claims department, those are all CCSI employees. Yes, but it's just the same as my example. They are all employed by Kelly. Kelly says we're going to give you a bunch of people. Go have a good time. We'll see you in three months. It seems to be trying to double up on something that is a singular set of individuals performing a single task for a single insurance company. And I just don't see the rationale for the doubling of it. So in both FAR, FAR, and SPARKS, both Arizona cases, the court held third-party claims handlers liable under a joint venture theory for the bad faith conduct. And so here the question really is whether there was any evidence that allowed a reasonable jury to reach the conclusion that CCSI and Country Life were engaged in a joint venture. That's a classic fact question. And I think the issue that you're struggling with, Judge Graber, is it's getting at an entirely separate doctrine called the Lent Employee Doctrine, which is it's an exception to the general respondeat superior doctrine. So as we all learned in law school, under respondeat superior, the employer is liable for the actions of its employees. There is a separate doctrine, which is an exclusion, an exception to that general liability in your kind of Kelly services example where they're just lending out employees. Well, I think I understand the distinction you're trying to draw, but it's particularly troubling in the context of punitive damages, because, again, you have one act by one set of people, and if they are truly a joint venture, then presumably it is the joint venture as a whole that is responsible for whatever the amount of punitive damages is. Because even if your other theory is right, I don't see an evil mind on the part of the same people doing the same one act being twice. It makes no sense to me. This is the issue that I asked your opponent about. And let's assume this was a joint venture, so there was sufficient evidence for it to be a joint venture. I have a hard time finding separate evil mind and evil hand in the two defendants because under your joint venture theory, you've got a shell of an insurance company that gets all of the people who make the decisions from CCSI. So shouldn't that be joint and several liability rather than several only liability? Certainly if it were partnership and we're imposing vicarious liability, it would be joint and several. So what separate bad acts did each of these defendants do? Well, it is the same conduct. So it's the same conduct that gives rise to the punitive damages against both companies. It's not only the same conduct. It's the same conduct by the same people. By the same people. By the same people. And I'd understand if there were a separate claims manager in CLI who said, hey, guys, let's conspire together to screw over this poor claimant, then you might impose punitive damages on both of them because of their evil mind and evil hand. But here, and I think your joint venture theory may be correct, but if it is correct, I don't know how we have two separate punitive damages awards. Well, Judge, I think the important thing is the posture of this case. That's really an attack on the jury instructions, an attack on the verdict form. Well, put aside waiver and whether the issue is raised or everything else. I'm trying to just get the legal construct in my mind. Under this circumstance, what's the justification for two separate punitive damages awards? You want to make sure that somebody stands up and says we need to do the right thing, whether it's the Board of Directors of CountryLife, and even though CountryLife has no employees, it does have a Board of Directors. But you've got, I mean, they're all one entity in your view. Although part of a joint venture. You've just hit the entity with a punitive damages award. Why do you need to hit separate parts of these? Now, it may be that you're entitled to go back and retry punitive damages and seek $5 million against one entity as opposed to 2.5 against each. I suspect you don't want to do that. But I'm still trying to figure out what justifies two separate punitive damages awards. It's not, I think, what your opponent says, which is that the CCSI people did nothing wrong. I think my problem is they appear to have done everything wrong. And so I can't figure out why there ought to be two separate awards. Well, I mean, it's hard for me to get past the waiver arguments because CountryLife hasn't challenged the punitive damages awards. And we know that all the employees who did the wrongdoing, who had the evil mind, who had the evil hand, those are all CCSI employees. So liability for punitive damages flows to them under either respondeat superior. Arizona law is pretty clear. Under respondeat superior, not separate proof of wrongdoing, punitive damages or damages are joint in several. They're not several only. So even if you go back to your respondeat superior theory, I'm just having trouble figuring out why these are two separate awards. Well, they're joint in several as between the employee and the employer. But there's the respondeat superior theory, which justifies an award of punitive damages against CCSI. And then there's the unchallenged punitive damages awards against CountryLife because they're always- Yeah, but if CC, it doesn't work this way for me. If CLI or CCSI is liable because they're vicariously liable, then that's a joint in several liability. One side is liable. It doesn't matter which way you switch it. I don't know how you get them to be separate. Well, because, I mean, especially under a joint venture, both joint ventures are responsible for each other's conduct. And so even though it's the same conduct- And under a joint venture, both joint ventures are responsible for each other's conduct. But in the absence, Sparks says, of some proof that each joint venture did something independently wrong, that liability would be joint in several, would it not? It may be or could be if that's how the jury was instructed and that's how the verdict forms were set. Well, it doesn't matter how the jury was instructed. The question is whether there's any evidence here to support a joint in several award. The jury may have followed its instructions faithfully. The question is whether or not the evidence is sufficient to support several only awards. I'm sorry. Well, I think the question here is whether there's evidence to support punitive damages award against CCSI. That's the only thing that's being challenged on appeal here. And there is, right? And Judge Reyes went through that. All the conduct of CCSI's own employees justifies that award. I had one more question for you. In an earlier answer, you relied on a pretrial document. Yes. The jury never had that in front of it, correct? That's correct. So when we are reviewing the sufficiency of the evidence that the jury heard, does that have any relevance? So it did not relieve us of our obligation to put forward sufficient evidence. I think that's what you're getting at. So don't we look at the record of what the jury heard? You do look at the record. But we don't look that they did not have that piece of information, so it passes out of the picture, correct? I don't think it is out of the picture. So certainly for evaluating the sufficiency of the record, we're not relying on the joint pretrial statement. We're relying on the testimony of Chad Carpenter, where he says, I'm employed with CC Services. I work for them. That's everybody's employer who works for me. You're making something of a forfeiture or waiver argument, I take it, that they can't, if there is sufficient evidence, they can't contest it because they agreed before trial that they wouldn't contest that these people were all employed by CCSI. So once we've met our threshold burden, then CCSI is now barred both at trial and on appeal from contesting that fact. They agreed not to contest it. There was an argument in the reply brief for the first time, Your Honor, that this was not signed. I'd like to give you a citation. It's 652 F. 2nd. 882 U.S. v. First National Bank of Circle. Again, 652 F. 2nd. 882. Where in footnote 3, this court ruled that an unsigned joint pretrial order is valid and is binding on the parties, including on appeal, when it is signed by counsel for both sides and lodged with the clerk of the court, as this one was, that is binding. And so to frame, I think, two out of the four issues turn on this issue of whether these people were employees of CCSI. But CCSI cannot now dispute that they were employees. The evidence permitted the jury to find that, first of all, that these people were that CCSI was more than just the HR entity. Some people testified that CCSI signed the paychecks. Other people testified more. Chad Carpenter testified that CCSI was his employer. But none of them testified, as far as I can tell, that CCSI, per se, was a claims handling entity. And they all said Country Life made the claims handling decisions, correct? I don't know that they said Country Life made the claims handling decisions. Maybe they did. But who at Country Life? When they're talking about Country Life making the claims handling decisions, that necessarily would have been, or the only evidence the jury had was that those would be people employed by CCSI. Is there any evidence in this record whether Country Life employed anyone directly? There's evidence that Country Life employed nobody directly. Well, is there evidence that Country Life employed no one directly, or is it only evidence? Is there only evidence that all the people you identified were employed by CCSI? No, there's testimony saying that Country Life has no employees. That's Chad Carpenter again. This is Volume 2 of our supplemental excerpts at page 102. Question, does Country Life have any employees? Answer, I don't believe Country Life technically has any employees, as far as I know. And there's another example of that. Question, does Country Life have any employees? Answer, not that I'm aware of. So there's absolutely testimony that Country Life has no employees. So the jury could find that this wasn't just the paychecks. But turning back to the punitives, this is similar, I think, to something like felony murder, where you have the same conduct gives rise to liability for two people. And you can separately sentence those two people for the same underlying conduct. That's what the jury was asked to do here. And if CCSI or Country Life wanted something different, if they thought there was no basis to award separate punitive damages, and they needed to say something at trial, after trial, in the motion for a new trial, in their opening brief, I mean on appeal, it's six ways from Sunday. If they thought that these verdict forms were not valid, if they thought there was no way that responding at superior or joint venture could support a punitive damages instruction, they needed to say something then. The instructions unequivocally state that an employer is liable for the acts of its employees. The instructions say that a joint venture is responsible for the actions of a joint venture partner. So the instructions unquestionably gave the jury the discretion to award the two punitive damages awards. If two entities are jointly engaging in wrongdoing, and they bear equal culpability, it's not surprising that the two awards would be assessed, and that the two awards would have the same amount because it's the same underlying bad conduct. Country Life has a board. Country Life's board should ensure that the claims handlers, the company that it chooses to handle the claims, are doing so appropriately. You need to provide some incentives for people to stand up and do the right thing. Thank you, counsel. Thank you. Your Honors, I'd like to first clarify the record and preservation on punitives and then turn back to joint venture. The punitive damages instruction that we were discussing earlier, Your Honor, I found for you at page 28. It's the verdict form, which says, any determination herein of joint liability is independent of any assessment of punitive or exemplary damages. The waiver discussion that you just heard is flipped on its head. Mr. McClure had the burden to establish evidence supporting punitive damages. So let me try this last thing that your friend was saying on you and see how you respond to it. He says all the bad conduct here was by CCSI employees, and their bad conduct is vicariously imputed to their employer, CCSI. You might have a good argument about why there shouldn't be punitive damages against CLI, but you don't make it. Respond to that. Your Honor, the problem is that's not what I heard. I heard two things. Okay. Maybe that's not what he said. Maybe I'm better than he is. Respond to what I said. The fundamental problem in the case is that Mr. McClure is trying to double dip. On one hand, he says country life. He discussed country life's board needing to control. Forget his argument. Maybe he made a bad argument. Respond to my question. My question is, if all the bad conduct was of people employed by CCSI and it deserves punitive damages, then CCSI ought to be liable for punitive damages. That doesn't tell me why CLI ought to be liable for punitive damages, but you don't seem to be attacking those in this appeal. So that's my question, not his argument. Answer that question. I can answer that question. You're correct. Under that factual scenario, country life should not be liable for punitive damages because it's one or the other,  But you don't raise that issue on appeal. Our position has always been that country life controls these employees, and we have not challenged that on a respondeat superior theory, country life is responsible for the claims handlers as its employees. You have not challenged punitive damages against country life? We have in the sense that through the compensatory damages argument and the experts. Right. You've challenged the amount but not the liability. Correct. Those arguments, if the court agreed with them, would require a reversal of both the compensatory and the punitive damages awards on behalf of country life. But in terms of which of the two entities is responsible for the work of these claims handlers, both Mr. McClure and country life agreed pre-trial that country life controls these employees. We talked a lot about the pre-trial order, but you can see at page 148 to 149 of the record excerpts, Mr. McClure agreed that country life controlled the employees. And so we did not take that to be contested. Both sides said country life is in control. The problem for Mr. McClure is that a lack of control by CCSI means they cannot be liable in a joint venture and they cannot be liable for punitive damages based on independent evil mind. Thank you, counsel. The case just argued is submitted, and we thank both counsel for very helpful arguments.
judges: Graber, Hurwitz, Miller